**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **JOSH WALDRIDGE** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** __3:19-CV-108__-CRS |
| | ) | |
| **HEAVEN HILL DISTILLERIES, INC** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

**COMPLAINT**

**I. PARTIES**

1.      The Plaintiff, Josh Waldridge ("Waldridge") is a Chaplin, Nelson County, Kentucky resident.

2.      The Defendant, Heaven Hill Distilleries, Inc. ("HHD"), is a Kentucky Corporation operating and conducting business in Bardstown, Nelson County, Kentucky.

**II. JURISDICTION AND VENUE**

3.      This is an action for violations of the Family Medical Leave Act ("FMLA") pursuant to 29 USC §2601 et. seq. and the Americans with Disabilities Act ("ADA") pursuant to 42 USC §12101 et. seq.

4.      This Court has original jurisdiction pursuant to the provisions of 29 USC §2601 et. seq. and 42 USC §12101 et. seq.

5.      Venue is proper in this district because the actions giving rise to this Complaint occurred in this judicial district.  Further, Defendant HHD operates and conducts business within this judicial district.

1

### III. FACTUAL BACKGROUND

6.    Waldridge is a former employee of HHD.

7.    Waldridge was employed by HHD in the position of "scrambler/dumper."

8.    Waldridge began his employment with HHD in February of 2017 and was employed with HHD for two (2) years.

9.    HHD is an "employer" within the meaning of the FMLA and ADA, at all times relevant to this Complaint.

10.    Waldridge was an "eligible employee" within the meaning of the FMLA, at all times relevant to this Complaint.

11.    During the course of Waldridge's employment, in approximately mid to late 2017, Waldrige began experiencing symptoms of numbness in his legs related to his high blood pressure that he had been diagnosed with at an early age.

12.    Waldridge notified HHD supervisor, Rob Brown (hereinafter "Brown") of his diagnosis of high blood pressure and need for medical treatment.  Waldridge's physician made adjustments to his medications that helped alleviate Waldridge's symptoms at that time, but Waldridge required follow up appointments and was unable to work on occasion due to the symptoms he was experiencing.

13.    Although Brown was aware of Waldridge's disability and need for medical treatment and had assured Waldridge that because his absences were related to his medical condition he would not be subject to any disciplinary action, Waldridge received a verbal coaching referred to as an "awareness" for attendance from Brown.

14.    HHD did not have an attendance policy at all times relevant to this Complaint.

15.     In approximately September 2018, Waldridge began experiencing episodes of sudden dizziness, radiating pain in his left arm and hand, visual disturbances and became nauseated.  Waldridge was also experiencing sudden spurts of high blood pressure on several occasions and low back pain and bladder pressure.   During this time, Waldridge was unable to work during flare ups of his symptoms and was undergoing medical testing of which he advised his HHD supervisors.

16.     Waldridge's father has passed away at a young age from a massive heart attack caused by high blood pressure and Waldridge's physician was concerned about the symptoms Waldridge was experiencing based on his family history of severe blood pressure issues. Waldridge's physician was also concerned that based on Waldridge's symptoms, he could have "pheochromocytoma," a rare tumor of the adrenal glands.

17.     Waldridge informed his supervisors of his serious health condition, his symptoms and his need for medical testing and treatment, although HHD never informed Waldridge of his rights and responsibilities as required by the FMLA at this time and was apparently tallying Waldridge's absences related to his medical condition against him.

18.     In October of 2018, Waldridge underwent CT scans which showed that Waldridge did not have pheochromocytoma, but was diagnosed with diverticulitis and kidney stones which ultimately required surgical intervention after further medical testing.

19.     Waldridge's urologist informed him that he would need time off work following surgery to remove significantly large kidney stones and advised that he apply for FMLA.

20.     Waldridge requested FMLA from HHD on or around December 18, 2018, which was approved.

21.     Waldridge underwent surgery for kidney stone removal on January 8, 2019, after which a stent attached to a string had been left following the procedure.

22.     Waldridge was unable to remove the stent himself and due to complications, he underwent a second surgery on January 17, 2019 to have the stent removed.

23.     Shortly thereafter, Waldridge returned to work at HHD after being released by his physician and was immediately suspended for "attendance." Waldridge was informed that the alleged "attendance" infractions were from September and October, for days that Waldridge was experiencing flare-ups related to his serious medical conditions and undergoing medical testing and treatment for his high blood pressure and kidney stones.

24.     Waldridge was called back in for a meeting at HHD with a Human Resources (HR) representative and a union steward and was terminated for "attendance."

25.     At the time of his termination from HHD, Waldrige still had significant FMLA days available to him and at least 40 hours of vacation time.

26.     Waldridge's high blood pressure, diverticulitis and kidney stones diagnoses constitute a disability under the American with Disabilities Act ("ADA") pursuant to 42 USC §12102 et. seq. and a "serious health condition" under the Family Medical Leave Act ("FMLA"), 29 United States Code § 2601 *et. seq.*

27.     HHD failed to provide information to Waldridge regarding Waldridge's rights and responsibilities pursuant to the FMLA which would have covered him for any days missed related to his serious health conditions, thus being in violation of the FMLA's mandatory notice requirements.

28.     HHD failed to accommodate Waldridge's disabilities and discharged Waldridge.

29.     HHD was aware of Waldridge's disabilities prior to discharging him.

4

30.     HHD perceived and regarded Waldridge as having disabilities prior to discharging him.

31.     Following his termination, Waldridge filed an EEOC claim against HHD, case number 474-2019-00453 for disability discrimination and retaliation on or around February 12, 2019.

### III.    CLAIMS AND CAUSES OF ACTION

### COUNT I.    VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT (INTERFERENCE)

32.     Waldridge re-alleges all allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

33.     Waldridge was an eligible employee under the FMLA and at the time of his leave, Waldridge had been employed by HHD for at least twelve (12) months.

34.     Waldridge properly notified HHD of his need for leave for his own serious health conditions.

35.     Waldridge was entitled to receive leave pursuant to the FMLA.

36.     HHD failed to provide proper and accurate notice to Waldridge regarding his FMLA entitlement and designating the dates upon which his FMLA had been approved or denied.

37.     HHD's actions, as set forth above, constitute interference in violation of the FMLA.

38.     As a result of HHD's violation of the FMLA, Waldridge has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

### COUNT II.    VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT (RETALIATION)

39.     Waldridge re-alleges all allegations contained in paragraphs 1 through 38 above as if fully set forth herein.

40.     Waldridge was an eligible employee under the FMLA.

41.     HHD retaliated against Waldridge by terminating Waldridge for taking FMLA-qualifying absences.

42.     HHD's actions, as set forth above, constitute retaliation in violation of the FMLA.

43.     As a result of HHD's violation of the FMLA, Waldridge has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

## COUNT III.  VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ DISCRIMINATION ON THE BASIS OF AN EMPLOYEE'S DISABILITY

44.     Waldridge re-alleges all allegations contained in paragraphs 1 through 43 above as if fully set forth herein.

45.     HHD terminated Waldridge's employment on the basis of a disability and/or a "perceived" disability and/or a "regarded as" disability in violation of 42 USC §12101 et. seq.

46.     As a result of HHD's violations of the ADA, Waldridge has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

## COUNT IV.  VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ EMPLOYER'S FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

47.     Waldridge re-alleges all allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

48.     Waldridge was a qualified individual with a disability under the ADA, 42 USC §12101 et. seq.

49.     HHD failed to reasonably accommodate Waldridge's disability in violation of 42 USC §12101 et. seq.

50.     As a result of HHD's violations of the ADA, Waldridge has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

6

**COUNT V.   MANDATORY RECOVERY OF ATTORNEY'S FEES AND COSTS**

51.     Waldridge re-alleges all allegations contained in paragraphs 1 through 50 above as if fully set forth herein.

52.     Waldridge is mandatorily entitled to recover his attorney's fees and costs pursuant to the provisions of the FMLA and ADA.

## IV.     PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Josh Waldridge, respectfully prays that he be awarded the following relief and all other relief to which he may be entitled against the Defendant, Heaven Hill Distilleries, Inc.:

A.     Trial by jury;

B.     Judgment against Defendant on all claims asserted herein;

C.     Compensatory and actual damages including but not limited to past and future lost wages and past and future lost benefits;

D.     Compensatory damages including but not limited to emotional distress, mental anguish, humiliation and embarrassment;

E.     All statutory remedies provided by the FMLA and the ADA;

F.     Liquidated damages pursuant to the FMLA for Defendant's willful violations of the FMLA;

G.     Equitable relief in the form of reinstatement, promotion and/or front pay;

H.     Punitive damages to punish and deter similar future unlawful conduct;

I.     An award of statutory attorney fees, expert witness fees, costs and expenses;

J.     Statutory interest on all monetary damage awards, verdicts, or judgments; and

K.      All other and additional relief to which Waldridge may be entitled.


                              Respectfully submitted,

                              THE ZOPPOTH LAW FIRM


                              /s/ Amanda R. Walker_____
                              Amanda R. Walker
                              Bradley S. Zoppoth
                              635 W. Main Street, Suite 400
                              Louisville, KY  40202
                              (502) 568-8884
                              arw@zoplaw.com
                              bsz@zoplaw.com
                              *Counsel for the Plaintiff, Josh Waldridge*